UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CLAUDE MAYNARD,**

        **Plaintiff,**                Case No. 2:05-CV-504
                                             JUDGE GREGORY L. FROST
   **v.**                              Magistrate Judge Kemp

**TOTAL IMAGE SPECIALISTS, INC.,**

        **Defendant.**

## OPINION AND ORDER

This matter comes before the Court for consideration of a motion for summary judgment (Doc. # 29) filed by Defendant Total Image Specialists, Inc. ("Defendant"), a memorandum in opposition (Doc. # 32) filed by Plaintiff Claude Maynard ("Plaintiff"), and a reply. (Doc. # 33). For the reasons that follow, this Court denies Defendant's motion. (Doc. # 29.)

### I. Background

Defendant is an Ohio corporation that manufactures and fabricates large dimensional sign facings, which are molded of plastic, for retailers. Plaintiff worked for Defendant or its predecessor for over 20 years.[1] Plaintiff worked as a Maintenance Lead Man. He was responsible for overseeing maintenance of the company building and equipment. His supervisor was Verlin Varney ("Supervisor Varney"), currently the Shop Foreman.

At the time relevant to the litigation, Defendant offered disability benefits to its employees through Total Image Specialists, Inc. Employee Health & Welfare Benefit Plan. By virtue of his employment, Plaintiff participated in the plan.

---

[1] The company was acquired by its present ownership in 1987. Prior to 1987, the company was known as Vacuform Industries.

The Sheet Metal Workers' Union Local No. 287 ("Union") represented Plaintiff and other employees of Defendant. The collective bargaining agreement ("CBA") in effect between the Union and Defendant in 2003 contained the following provisions in pertinent part regarding Defendant's absentee policy:

> Employees are required to notify their supervisors as soon as they are aware that they cannot work the scheduled hours so that the supervisor can make alternative arrangements. Failure to notify their supervisor during the first two, (2) hours of their scheduled shift will result in an additional occurrence. . . . Failure to call-in for three, (3) consecutive days of absence will result in automatic termination. It is assumed in this case that the Employee has voluntarily quit.

For approximately ten-years prior to 2003, Plaintiff had seen various doctors due to his chronic kidney pain, kidney stones, and hematuria. Plaintiff alleges that he was diagnosed with loin pain hematuria syndrome. Defendant, in contrast, claims that Doctors entertained a diagnosis of this condition, but did not formally diagnosis Plaintiff. On numerous occasions, Plaintiff provided Defendant with doctor's notes stating that he would need to be absent intermittently due to his physical condition. Throughout the years, Defendant accommodated Plaintiff's periodic absences without any complaints from Plaintiff of unfair treatment.

As early as February 2003, Plaintiff began to also have problems with a lump that had developed in his left breast. That month, Plaintiff saw his family physician, Dr. Bright, for his left breast lump. In April 2003, Plaintiff had a mammogram.

In early 2003, Steve Brann, Vice President of Operations for Defendant, met with several Union representatives at a Union-Management meeting. At that meeting, they discussed that Plaintiff was not following the proper procedures to report his absences.[2]

---

[2] Though not material to this Court's analysis, this Court notes that Plaintiff contends that employees of Defendant discussed at this meeting that Defendant was trying to terminate Plaintiff because of Plaintiff's absences. Employees at the meeting testified, however, that they did not recall discussing Defendant's desire to terminate Plaintiff. Rather, they did recollect addressing their concern with Plaintiff's failure to comply

Subsequently, in April 2003, Supervisor Varney and Mr. Brann warned Plaintiff to follow proper CBA procedures and report absences directly to Supervisor Varney. Plaintiff then correctly reported his absences on April 24, 25, and 28, 2003 by calling Supervisor Varney directly or having a relative do so. Plaintiff also provided Defendant with a doctor's note dated May 7, 2003 stating that he might have to miss work for chronic flank pain.

Plaintiff testified that by Friday May 16, 2003 the lump in Plaintiff's left breast had become so swollen and tender that it was difficult for Plaintiff to wear a shirt or move his upper extremities without pain. As a result, Plaintiff believed that he was unable to work.[3] That day, Plaintiff notified Supervisor Varney via voice-mail of the following: his medical condition, his need to be off work, and that he might be required to have surgery.

On Monday May 19, 2003 Plaintiff called into work and spoke with Geraldine Frye ("Frye"), in human resources. Plaintiff asked Frye to pass the message on to Supervisor Varney that he would be out for a period of time. Moreover, Plaintiff requested from Frye disability paperwork. Also, on May 19, 2003 Plaintiff saw Dr. Bright. Dr. Bright recommended that Plaintiff see a surgeon.[4]

Plaintiff received disability paperwork from Frye the following day. Plaintiff, however, never spoke to directly to Supervisor Varney on May 19 and 20, 2003. There remains a factual dispute over whether and when Plaintiff contacted Supervisor Varney on May 21, 2003. Plaintiff

---

with reporting methods.

[3] Defendant contends that Plaintiff's physician records and testimony contradicts Plaintiff's affidavit. Specifically, Defendant points to Dr. Bright's testimony that he did not recall whether Plaintiff's breast lump interfered with his ability to move on a regular basis. Dr. Bright also did not recall whether the breast lump interfered with Plaintiff's daily activities. He believed, however, that the record did not indicate such interference.

[4] Plaintiff had surgery to have the lump removed on June 3, 2003.

3

contends that he called Supervisor Varney when he learned from his nephew that Defendant had allegedly terminated him for his failure to report his absences for three days in a row. Defendant argues that even if Plaintiff spoke to Supervisor Varney on May 21, 2003 it was not within two hours of the start of his scheduled shift, and therefore his call was too late. Defendant contends that it already had properly terminated Plaintiff pursuant to the CBA absentee provision at the time of the May 21, 2003 conversation.

On June 9, 2003 Defendant informed Plaintiff that the disability forms that he had completed and returned to the company would not be processed because of his termination of employment effective May 23, 2003. After being terminated, Plaintiff filed a grievance claim through the Union requesting his job back if his doctor approved of him going back to work. On June 9, 2003 his grievance was denied.

Plaintiff in the present action claims that Defendant violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 *et seq*, when Defendant allegedly retaliated against him for invoking his rights under the FMLA. Furthermore, Plaintiff alleges that Defendant interfered with his rights to disability benefits under § 510 of Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140. Plaintiff seeks the following relief: back pay, reinstatement[5], restoration of benefits, including but not limited to disability benefits, front pay, and other equitable relief; interest pursuant to 29 U.S.C. § 2617(a)(1)(A)(ii); liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii); at least $25,000 in compensatory damages for the embarrassment, humiliation, and burden of loss of employment; at least §25,000 in punitive damages; prejudgment and post-judgment interest; as well as attorneys' fees and costs.

---

[5] Notwithstanding the relief sought, Plaintiff appears to later concede that he has not been able to work since May of 2003. (Doc. # 32.)

4

## II. Issues Presented

Plaintiff's FMLA retaliation claim presents the following issues: (1) did Plaintiff have a "serious health risk" qualifying him to leave under the FMLA; (2) did Plaintiff avail himself of a protected right under the FMLA by imparting sufficient notice to Defendant to appraise it of Plaintiff's intent to take leave; (3) did Defendant offer a legitimate non-discriminatory reason for terminating Plaintiff when it allegedly discharged Plaintiff for his failure to comply with Defendant's absentee policy, or was it a pretext to retaliate against Plaintiff for exercising his FMLA rights; and (4) does evidence indicating that Plaintiff is unable to return work that Defendant acquired after it terminated Plaintiff, provide a complete defense to Defendant's liability under FMLA such that this Court is precluded from awarding damages to Plaintiff.

Plaintiff's ERISA claim requires this Court to address whether Defendant offered a legitimate non-discriminatory reason for terminating Plaintiff when it allegedly discharged Plaintiff for his failure to comply with Defendant's absentee policy, or was the reason offered a pretext to interfere with Plaintiff's rights to seek disability benefits under ERISA?

## III. Standard of Review

Defendant moves for summary judgment under Fed. R. Civ. P. 56. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial burden of showing the absence of any such "genuine issue" rests with the moving party: it must inform the district court of the basis for its motion, and identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits,

if any," which it believes demonstrates the absence of a genuine issue of material fact. Fed. R. Civ P. 56(e).

The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party cannot rest on its pleadings or merely reassert its previous allegations. Fed. R. Civ. P. 56(e). It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rather Rule 56(e) "requires the non-moving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the non-moving party who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

The Court must therefore grant a motion for summary judgment if Plaintiff, the non-

moving party who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case. *See Muncie*, 328 F.3d at 873 (citing *Celotex Corp.,* 477 U.S. at 324.) However, in ruling on a motion for summary judgment, "a district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

## IV. Discussion

### A. FMLA Retaliation Claim

Defendant contends that it is entitled to summary judgment on Plaintiff's FLMA retaliation claim because Plaintiff cannot prove his prima facie case. Defendant claims that Plaintiff did not avail himself of a protected right under the FMLA because he failed to properly notify Defendant of his intent to take leave. Conversely, Plaintiff alleges that he properly notified Defendant. This Court finds that there are genuine issues of material fact that require this court to deny Defendant's motion for summary judgment on Plaintiff's FMLA claim.

The FMLA generally requires employers to provide qualifying employees up to twelve weeks of unpaid leave per year. 29 U.S.C. § 2612(a)(1)(D). Pursuant to the FMLA, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1); *see* C.F.R. § 825.220(b) (stating that "[a]ny violations of the Act or of these regulations constitute interfering with, restraining, or denying, the exercise of rights provided by the Act."); *see also Cavin v. Honda of America Mfg. Inc.*, 346 F.3d 713, 719 (6th Cir. 2004). There are two distinct theories of recovery under the FMLA. First, an employee may raise a claim against his or her employer for

interfering with rights to which an employee was entitled. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). Second, an employee may file a claim against an employer for retaliating against an employee for invoking his or her rights under the FLMA.

To qualify under the FMLA, the employee must have a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA defines the term "serious health condition" to mean "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). When deciding whether an alleged FMLA plaintiff suffered from a "serious health condition" a court can consider evidence of a plaintiff's medical condition that arose after the employer acted adversely against him or her. *See Edgar*, 443 F.3d at 512 (citing *Bauer v. Varity Dayton-Walther Corp.*, 118 F.3d 1109, 1112 (6th Cir. 1997)).

Here, at the time in which Plaintiff sought FMLA leave, Plaintiff had seen Dr. Bright for his left breast lump, had undergone a mammogram, and was scheduled to see Dr. Bright again. The lump in Plaintiff's left breast made it difficult for Plaintiff to move upper extremities without pain. Subsequently, at the recommendation of Dr. Bright, Plaintiff saw a surgeon and then had surgery to have the lump removed. For two reasons, this Court is willing to assume that Plaintiff suffered from a "serious health condition" that would warrant leave under the FMLA. First, Plaintiff's need for continual treatment from a health care provider for his illness. Second, Defendant has presented no evidence to the contrary.

This Court now turns to whether Plaintiff met his initial burden of establishing a prima facie case of retaliation under the FMLA. Because Plaintiff provides no direct evidence of

retaliation, this court must apply *McDonnell Douglas* burden-shifting analysis to Plaintiff's FMLA retaliation claim. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Edgar*, 443 F.3d at 508. To make out a prima facie case of retaliation under the FLMA, Plaintiff must show that (1) he availed himself of protected right under the FMLA by properly notifying Defendant of his intent to take leave, (2) he suffered an adverse employment action, and (3) there was a casual connection between the exercise of his rights under the FMLA and the adverse employment action. *Edgar*, 443 F.3d at 508 (citations omitted).

Defendant contends that it correctly refused to recognize Plaintiff's May 16, 19-22 absences as FMLA-qualifying leave because Plaintiff failed to properly notify Defendant of his intent to take FMLA leave. Thus, Defendant argues that the absentee provisions in the CBA governed. Defendant further posits that Plaintiff violated these provisions when he did not report his absences directly to his supervisor. Therefore, Defendant alleges that it properly terminated Plaintiff pursuant to the CBA.

With respect to the applicability of the CBA, this Court notes that an employee only needs to comply with the requirements of the FMLA to invoke its protection, even if those requirements conflict with an employer's internal policies. *See Cavin*, 346 F.3d at 723 (citing *Marrero v. Camden County Bd. of Soc. Servs.*, 164 F. Supp. 2d 455, 463-64 (D.N.J. 2001)). Thus, if an employee properly invokes the protection of the FLMA, an employer's internal policies regarding leaves of absence do not apply to an employee to the extent that the policies conflict or are more stringent than the requirements of the FMLA. *See Cavin*, 346 F.3d at 723; *Marrero*, 164 F. Supp. 2d at 463-64.

Thus, this Court must analyze whether Plaintiff invoked the protection of the FMLA by

9

properly providing notice of his intent to take FMLA-qualifying leave. The Sixth Circuit has acknowledged "that it would be inappropriate to articulate categorical rules governing the content of notices," instead it has recognized that " '[w]hat is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case.' " *Cavin*, 346 F.3d at 724 (quoting *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995)).

When an employee must provide notice to take FMLA leave is governed by the nature of an employee's need for leave. First, if the need for leave is foreseeable at least 30 days in advance, an employee must provide that much notice, so that an employer can minimize the disruptive effect of an unscheduled leave on its business. 29 U.S.C. § 2612(e)(2)(B); 29 C.F.R. § 825.302(a); *see also Aubuchon v. Knauf Fiberglass, GMBH*, 359 F.3d 950, 951 (7th Cir. 2004). Second, if need for leave is foreseeable, but "30 days notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable." 29 C.F.R. § 825.302(a). Finally, when the need for leave is not foreseeable at least three days in advance, notice must be given "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a).

In this case, Plaintiff argues that the record shows that his injury/illness was unforeseeable, such that giving notice 30 days in advance was impracticable. Rather, Plaintiff contends he gave notice of his FMLA leave as soon as practicable. Initially, Defendant argues (Doc. # 29) that Plaintiff requested medical leave for the specific purpose of having surgery. It is undisputed, however, that on May 16, 2003 Plaintiff had not yet seen his surgeon or scheduled his

10

surgery.[6] Conversely, Plaintiff alleges that he did not request FMLA leave for the specific purpose of having surgery. Rather, Plaintiff testified that on Friday May 16, 2003 the lump in his left breast had become so swollen and tender that it was difficult for Plaintiff to wear a shirt or move his upper extremities without pain. As a result, he believed that was unable to work. On May 16, 2003 Plaintiff notified Supervisor Varney via voice-mail of the following: his medical condition, his need to be off work, and that he might be required to have surgery. Moreover, on Monday May 19, 2003 Plaintiff called into work and spoke with Frye in human resources. Plaintiff asked Frye to pass the message on to Supervisor Varney that he would be out for a period of time. Moreover, Plaintiff requested from Frye disability paperwork. Plaintiff received disability paperwork from Frye the following day.

In response, Defendant contends that Plaintiff's physician records and testimony contradict Plaintiff's "self-serving and conclusory" affidavit. (Doc. # 32.) Specifically, Defendant points to Dr. Bright's testimony that he did not recall whether Plaintiff's breast lump interfered with his ability to move on a regular basis. Dr. Bright also did not recall whether the breast lump interfered with Plaintiff's daily activities. He believed, however, that the record did not indicate such interference.

This Court concludes that there is a genuine issue of material fact as to whether Plaintiff gave timely notice to avail himself of his FMLA rights. Therefore, this Court is precluded from granting Defendant's motion for summary judgment on Plaintiff's FMLA retaliation claim.

This Court also finds that there is a genuine issue of material fact as to whether the manner in which Plaintiff gave his notice was sufficient to avail himself of his right to leave

---

[6] Plaintiff saw his surgeon on May 19, 2003 and had surgery on June 3, 2003.

under the FMLA. The Sixth Circuit has stated that when an employee provides notice and a qualifying reason for requesting FMLA leave, "[a]n employee does not have to expressly assert his right to take leave as a right under the FMLA." *See Cavin*, 346 F.3d at 723 (citing *Hammon v. DHL Airways, Inc*., 165 F.3d 441, 450 (6th Cir. 1999)). Rather, an employee's duty is merely to place the employer on notice of a probable basis for FMLA leave. *Aubuchon*, 359 F.3d at 953 (stating that an employee is not required to write a brief demonstrating legal entitlement, rather he must just provide the employer with enough information to establish that there is probable cause to believe he is giving notice of FMLA leave). After such notice, it is "the employers' duty to request such additional information from the employee's doctor or some other reputable source as may be necessary to confirm the employee's entitlement." *Aubuchon*, 359 F.3d at 953 (citing 29 C.F.R. § 825.302(c), 825.303(b); 825.305(d); *Cavin*, 346 F.3d at 723-24).

In *Walton v. Ford Motor Company*, the Sixth Circuit held that an employee did not provide his employer with adequate notice of his intent to take leave for an FMLA-qualifying injury. 424 F. 3d 481 (6th Cir. 2006). Several factors were crucial to the Court's holding. First, prior to termination, the employee never attempted to contact his supervisor, the labor relations department or medical department. *Id*. at 486-87. He also never requested FMLA certification forms. Furthermore, he never responded to a "5-day quit letter." *Id.* Finally, he failed to submit medical paperwork until two weeks after he was terminated. *Id*.

Implicit in the Sixth Circuit's reasoning in *Walton* is that if the employee had attempted to contact his supervisor or human resources, had requested FMLA certification forms, or submitted medical/disability paperwork more promptly, the Court may have found that the employee provided the employer with sufficient notice to avail himself of his rights under the FMLA.

Here, this Court again notes that it is undisputed that on May 16, 2003 Plaintiff notified Supervisor Varney via voice-mail of the following: his medical condition, his need to be off work, and that he might be required to have surgery. Moreover, on Monday May 19, 2003 Plaintiff called into work and spoke with Frye in human resources. Plaintiff asked Frye to pass the message on to Supervisor Varney that he would be out for a period of time. Moreover, Plaintiff requested from Frye disability paperwork and received it from Frye the following day. Defendant contends that Plaintiff's actions aforementioned, were not an attempt by Plaintiff to avail himself of FMLA leave, rather Plaintiff was simply taking time off.

As a result of this factual dispute, this Court also finds that there is a genuine issue of material fact as to whether Plaintiff's notice contained sufficient content to Defendant to appraise Defendant of Plaintiff's need to take leave for an FMLA-qualifying injury.

As for the second prong of Plaintiff's prima facie case of retaliation, it is undisputed that Plaintiff suffered an adverse employment action when Defendant terminated him on May 21, 2003.

With respect to the third prong, this Court also finds that there is a genuine issue of material fact as to whether Defendant's proffered explanation for terminating Plaintiff–the failure to comply with the absentee policy– was a pretext for retaliation.

This Court recognizes that an employer can defeat an allegation of pretext. The employer, however, must provide more than just an honest reason for its decision. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 806-808 (6th Cir. 1998) (rejecting the Seventh Circuit's application of the "honest belief" rule that credits an employer's belief without it being reasonably based on particularized facts). Rather, the employer must show that it made a reasonably informed and

considered decision grounded in fact and not on "unfounded fear, prejudice, ignorance or mythologies." *Smith*, 155 F.3d at 806, 808 (quoting 136 Cong. Rec. S 7422-03, 7437 (daily ed. June 6, 1990) (statement of Senator Harkin)).

Defendant argues it properly terminated Plaintiff because it honestly believed that Plaintiff violated the absentee provisions of the CBA when he did not report his absences directly to his supervisor for three consecutive days. Supervisor Varney contends that he had no knowledge that Plaintiff requested or received paperwork. This argument, however, is predicated on a finding that this Court is unwilling to make because of the previously noted factual dispute that Plaintiff did not provide adequate notice to Defendant of his FMLA-qualifying leave.

The Court emphasizes again that it is undisputed that on May 16, 2003 Plaintiff notified Supervisor Varney via voice-mail of the following: his medical condition, his need to be off work, and that he might be required to have surgery. On Monday May 19, 2003 Plaintiff called into work and spoke with Frye. Plaintiff asked Frye to pass the message on to Supervisor Varney that he would be out for a period of time. Moreover, Plaintiff requested from Frye disability paperwork and received it from Frye the following day. Given this constructive knowledge, this Court finds that there is a genuine issue of material fact as to whether Defendant's decision to terminate Plaintiff, though allegedly honest, was a reasonably informed decision based on these facts.

It is undisputed that Plaintiff has been unable to work since May 2003. Defendant essentially claims that after acquired evidence of Plaintiff's inability to work, precludes this Court from awarding damages on Plaintiff's FMLA claim. This Court is unconvinced.

The Sixth Circuit has stated that in FMLA retaliation cases, an employer's post-

termination knowledge of an employee's inability to return to work is not a complete defense to liability, but should be considered in determining the appropriate remedy for the FMLA violation. *See Edgar*, 443 F.3d at 508; (citing *McKennon v. Nashville Banner Publ'n Co.*, 513 U.S. 352 (1995)). Thus, in light of Sixth Circuit precedent, this Court finds that Plaintiff's inability to return to work does not prohibit Plaintiff from recovering damages, but may place a limit on the amount of recovery at trial.

### B. ERISA Claim

Section 510 of ERISA provides that "[i]t shall be unlawful for any person to discharge . . . a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]" 29 U.S.C. § 1140.

To state a claim under § 510, "the plaintiff must show that an employer had a specific intent to violate ERISA." *See, e.g., Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997). In the absence of direct evidence of discriminatory intent, a plaintiff can establish a prima facie case by showing the existence of "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled. " *Id.* Moreover, the Sixth Circuit has also stated that in a § 510 interference claim, a plaintiff must also show that the "alleged illegal activity [had] a casual connection to the plaintiff's ability to receive an identifiable benefit." *Smith v. Ameritech*, 129 F.3d at 865 (citing *Mattei v. Mattei*, 126 F.3d 794 (6th Cir. 1997.))

If the plaintiff states a prima facie case under § 510, the employer can rebut the presumption of impermissible action raised by the prima facie case by introducing " 'evidence of a legitimate, non-discriminatory reason for its challenged action.' " *Humphreys v. Bellaire Corp*.,

15

966 F.2d 1037, 1043 (6th Cir. 1992) (quoting *Gavalik v. Continental Can Co.*, 812 F.2d 834, 853 (3d. Cir. 1987)); *see also Smith*, 129 F.3d at 865.

The burden is then shifted back to the plaintiff to show the employer's proffered reason was mere pretext. *Smith*, 129 F.3d at 865. The Plaintiff, however, need not show that the employer's sole purpose was to interfere with the plaintiff's entitlement to benefits. *Smith*, 129 F.3d at 865; (citing *Shadid v. Ford Motor Co.*, 76 F.3d 1404, 1411 (6 th Cir. 1996)). Rather, Plaintiff must " 'either prove that interference was a motivating factor in the employer's actions or prove that employer's proffered reason is unworthy of credence.' " *Shadid* 76 F.3d at 1411 (quoting *Humphreys*, 966 F.2d at 1043); *see also Smith*, 129 F.3d at 865.

In this case, it is undisputed that Plaintiff has established a prima facie case under § 510. This Court has already found, however, that there is a genuine issue of material fact as to the truth to Defendant proffered reason for terminating Plaintiff. As a result, this Court is precluded from granting Defendant's motion for summary judgment on Plaintiff's ERISA claim as well.

## V. Conclusion

For the reasons aforementioned, Defendant's motion for summary judgment (Doc. # 29.) is **DENIED**.

    **IT IS SO ORDERED**.

     **/s/ Gregory L. Frost**
    **GREGORY L. FROST**
    **UNITED STATES DISTRICT JUDGE**